**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHEN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| RICHARD J. JANKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 16-CV-50103 |
| v. | ) | |
| | ) | Honorable Judge Frederick J. Kapala |
| DEAN FOODS COMPANY, and DEAN | ) | |
| DAIRY HOLDINGS, LLC, | ) | Magistrate Judge Iain D. Johnston |
| | ) | |
| Defendants. | ) | |

**AMENDED COMPLAINT**

Plaintiff, RICHARD J. JANKOWSKI, by and through his attorneys, THE COFFEY

LAW OFFICE, P.C., pursuant to Federal Rule of Civil Procedure 15(a)(1), states as and

for his Amended Complaint against Defendants DEAN FOODS COMPANY and DEAN

DAIRY HOLDINGS, LLC, as follows:

**Nature of Case**

1.      Plaintiff brings this action against Defendants to recover damages

proximately caused by Defendants' illegal discrimination and failure to accommodate in

violation of Title I of the Americans with Disabilities Act of 1990, as amended, 42 U.S.C.

12101 *et seq.* (the "ADA"), and Defendants' illegal retaliatory termination of his

employment in violation of the Illinois Worker's Compensation Act, 820 ILCS § 305/1 *et

seq.*, and the public policy of the State of Illinois.

**Jurisdiction and Venue**

2.      This Court has original jurisdiction over Plaintiff's ADA claims under 28

U.S.C. §§ 1331, 1337, and 1343.

3.     This Court has supplemental jurisdiction over Plaintiff's state law retaliatory discharge claim pursuant to 28 U.S.C. 1367(a).

4.     Venue is proper in this Court in that Defendants' illegal acts complained of herein took place within the geographical boundaries of this Court's jurisdiction.

5.     On February 17, 2015, Plaintiff timely filed a charge of disability discrimination, including failure to accommodate his disability against Defendants with the local district office of the EEOC.

6.     On January 20, 2016, the EEOC issued a Notice of Right to Sue in connection with Plaintiff's charge.

7.     On April 18, 2016, Plaintiff filed his Pro Se Appearance and Complaint in this matter. He attached a copy of the EEOC Charge and Notice of Right to Sue to his initial Complaint.  His initial complaint was filed within 90 days of Plaintiff's receipt of the EEOC Right to Sue Notice.

## The Parties

8.     Plaintiff, RICHARD J. JANKOWSKI (hereafter "Richard"), is an individual residing within the jurisdictional boundaries of this Court.

9.     Defendant, DEAN FOODS COMPANY (hereafter "DFC"), is a foreign corporation registered and licensed to do business in Illinois, and at all times relevant to the allegations herein, conducting a significant business in Huntley, Illinois, within the geographical boundaries of this Court, Illinois, where its illegal activities described below took place.

10.     Defendant, DEAN DAIRY HOLDINGS, LLC (hereafter "DDH"), is a foreign limited liability company registered and licensed to do business in Illinois, and at all

times relevant to the allegations herein, conducting a significant business in Huntley, Illinois, within the geographical boundaries of this Court, Illinois, where its illegal activities described below took place.

11.     Defendants DFC and DDH were the single and/or joint employer of Richard and will be jointly referred to hereafter as "Dean Foods."

12.     At all relevant times, Dean Foods employed in excess of 100 employees at its Huntley, Illinois, facility and was thus an employer and covered entity as defined under the ADA.

## Relevant Facts Common to all Counts

13.     Richard started employment with Dean Foods in April 2002 in the position of General Dairy Worker.

14.     Throughout his Dean Foods employment, Richard was been a member of the Dairy Employees Union/Teamsters Local 754 ("the Union").

15.     Richard's job performance at all relevant times met or exceeded Dean Food's legitimate expectations.

16.     On August 16, 2003, Richard sustained injuries in an accident at work while lifting and throwing heavy skids, the most serious of which were to his neck and upper back.

17.     On September 19, 2003, Richard filed an Application for Adjustment of Claim against Dean Foods with the Illinois Workers' Compensation Commission related to his August 16, 2003, workplace accident and injuries (IWCC Case No. 03 WC 045700).

18.     Richard returned to work ("RTW") in a limited capacity in December 2003, and was later transitioned back to full duty work.

19.     On May 14, 2005, Richard experienced a severe recurrence of neck pain at work pushing a very heavy, loaded cart, or "bossie," up a ramp. He was thereafter off of work, and underwent cervical spine fusion surgery in December 2005.

20.     On January 12, 2007, Richard filed an Application for Adjustment of Claim against Dean Foods with the Illinois Workers' Compensation Commission related to his May   2005, workplace accident and injuries (IWCC Case No. 07 WC 001646).

21.     In May 2006, Richard RTW full duty.

22.     In August 2009, Richard received a bonus of one day's pay for his perfect attendance during the period May 2008 to May 2009.

23.     On October 5, 2009, Richard sustained injuries in an accident at work pushing heavy bossies full of product, the most serious of which were to his left side of neck and left shoulder.

24.     Richard immediately recorded the accident and pain on the medical sheet that was on the first aid cabinet, took some pain pills, and reported the accident to his foreman Nellie Martinez.

25.     He thereafter fully cooperated and complied with Dean Foods's work accident and injury reporting procedures.

26.     On October 6, 2009, Richard spoke with his doctor's office and attempted to make an appointment. The earliest available appointment was in December.

27.     On October 7, 2009, Richard RTW and was again ordered by foreman Martinez to go to the cooler and push full, heavy bossies. He complied and again felt

sharp on his left side. He reported the pain to Martinez, and recorded it on the medical sheet. He told Martinez that he tried to get in to see his doctor the day before, and has asked his doctor to provide a note restricting him from pulling loaded bossies.

28.    On October 9, 2009, Richard received a letter from his doctor stating that he was not to push/pull bossies or loaded carts, and that he had an appointment set for December.

29.    Richard faxed the doctor's letter to Dean Foods, and Dean Foods Safety Manager, Dave Dickson confirmed that it was received.

30.    On October 10, 2009, Ms. Martinez again ordered Richard to push bossies. He told her he had a doctor's note restricting him from doing that job. She stated that Randy Lentz, Dean Food's Plant Superintendent, told her that Richard had to push bossies anyway. When Richard asked what would happen if he refused, Ms. Martinez stated that she would go ask Mr. Lentz.

31.    Mr. Lentz asked Richard to come see him, and then told him that his condition was "pre-existing." Richard stated that it was not, and that he had re-injured himself days earlier, but could not get into see the doctor until December. Mr. Lentz told Richard that if he refused to push bossies, he would have to go home without pay and could not return to work until he was able to work full duty.

32.    On October 14, 2009, Mark Dade, Dean Food's Plant Supervisor, and Randy Lentz asked Richard why he could not push bossies. Richard told them that he had re-injured his neck and shoulder and it caused him great pain to push bossies. Mr. Dade stated that it was a "pre-existing condition . . . . so it does not count." Richard disagreed. They both told Richard that he had to go home until he could work full duty.

33.     On October 15, 2009, Ms. Martinez again ordered Richard to push full bossies.  He again asked her what would happen if he did not.  Mr. Lentz called Richard into Dean Food's Plant Manager, Greg Warren's office, and asked him what the problem was.  Richard again stated he re-injured his neck and has a doctor's note not to push bossies.  Mr. Lentz, Mr. Dade and Mr. Dade stated again that Richard's condition was pre-existing so the note does not count.  Greg Warren stated that if Richard could not do the job 100%, he would have to go home without pay until he could.   Richard returned to work and pushed full bossies for approximately 2 hours before he needed a break to take pain medication.  Ms. Martinez told Richard that he would be pushing full bossies for another 2 hours.  Richard told Ms. Martinez he was in too much pain to do that, and could no longer work.  He punched out early.

34.     On October 16, 2009, Richard reported to work and noticed his time card missing.  He was summoned into the conference room for a meeting with Randy Lentz and Dave Dickson.  They asked him why he went home early the night before.  Richard answered because he was in pain.  They interrogated Richard again on the re-injury and their claim it was pre-existing.  Richard again told him he did report the re-injury to Ms. Martinez and also noted it on the medical record/first aid cabinet chart system.

35.     On October 16, 2009, Dean Foods directed Richard to go see their doctor in Elgin, IL.   He did, was examined and was issued work restrictions to not lift more than 25 lbs., not push/pull more than 50 lbs., and prescribed various pain and anti-inflammatory medications.

36.    Also, on October 16, 2009, Richard filed a Grievance (#10-17-09-C) with the Union stating that Dean Foods violated Article 29, page 24, "Non-Discrimination," by not accepting his doctor's note stating he could not push/pull loaded bossies.

37.    On October 22, 2009, Richard returned to see the company doctor and was told that his condition worsened, put on a stronger meds, and continued the work restrictions.

38.    On October 25, 2009, Richard submitted a detailed retaliation/discrimination complaint letter to Dean Food's corporate office setting forth the aforementioned events.

39.    From on or about October 2009, through to February 2011, Richard worked for Dean Foods in various light/limited duty jobs.

40.    In July 2010, Dean Food's doctor examined Richard and placed him on permanent work restrictions of no lifting greater than 25 lbs. from floor to waist, and no pushing/pulling greater than 50 lbs.

41.    On December 23, 2010, Richard, through workers' compensation counsel, filed an Application for Adjustment of Claim against Dean Foods with the Illinois Workers' Compensation Commission related to his October 5, 2009, workplace accident and injuries (IWCC Case No. 10 WC 048866).

42.    Richard continued to work for Dean Foods within his permanent medical restrictions through to February 2011, at which time his doctor fully restricted from work due to deteriorating neck and upper back condition and associated increased pain.

43.    In the Fall of 2011, Richard's doctor recommended a second neck surgery and he agreed.

7

44.     In the Fall of 2011, Dean Food's formally denied Richard's workers' comp claim related to his Oct 2009 work injury, and thereafter refused to voluntary pay any benefits under the IWCA including TTD, or incurred medical expenses.

45.     In January 2013, the parties participated in an arbitration hearing on Richard's work compensation Case No. 10 WC 048866.  The primary issue was whether Richard's present medical condition was causally related to the October 5, 2009, workplace accident.  The case remains unresolved and is presently pending before the Illinois Appellate Court on review of whether the circuit court correctly affirmed the IWCC decision in favor of Richard finding that there was a causal connection.

46.     On August 20, 2013, Richard underwent a second surgery on his neck paid for through his group health insurance.

47.     On August 7, 2014, Richard was released to RTW within comparable permanent limited duty restrictions that he was under pre-op (i.e., no repetitive grabbing; no pushing/pulling > 50 lbs.; no lifting > 25 lbs. from floor to waist; no above shoulder work).

48.     On August 7, 2014, Richard faxed into Dean Foods his Work Duty Status note from his doctor stating that he could RTW within his permanent restrictions.

49.     On September 5, 2014, Richard, his Union representatives, and Dean Foods employees including HR Manager George Spadoni met to discuss Richard's pending Union grievances and request to RTW.

50.     On September 8, 2014, Richard filed another Grievance (No. 9-12-14-B) with the Union stating Dean Foods violated Article 29, page 25, by refusing to return him

8

to work within his medical restrictions.

51.   On October 31, 2014, Richard, his Union representatives, and Dean Foods employees including HR Manager George Spadoni met to discuss Richard's pending Union grievances and request to RTW.

52.   On November 3, 2014, Dean Food's formally denied Richard's grievance No 9-12-14-B, and refused to return him to work.

53.   On December 27, 2014, Richard sent a written letter to Dean Foods' Dallas HQ explaining that he had been waiting to be returned to work since August 2014, that he filed a formal complaint of retaliation in October 2009, and he requested a formal investigation into the matter.

54.   On January 5, 2015, Richard called Dean Foods "Ethics Helpline," and reported that the company's refusal to allow him to RTW was discrimination and retaliation (Report #120779371).

55.   On January 27, 2015, Richard, his Union representatives, and Dean Foods employees including HR Manager George Spadoni met again to discuss Richard's pending Union grievances and request to RTW.  At this meeting, Union rep Greg Munks read off a list of approx. 8 other workers that Dean Foods had allowed to return to work within their respective medical restrictions.

56.   On January 30, 2015, Richard faxed to Dean Foods a more recent Work Duty Status note from his doctor again stating that he could RTW within his permanent restrictions.

57.   On February 9, 2015, Dean Foods again denied Richard's Union grievance and request to RTW, and offered no alternate accommodations or process to

determine the appropriate accommodation under the circumstances.

58.     On February 13, 2015, Richard filed a Grievance (No. 2-16-15-C) with the Union stating Dean Foods violated Article 29, page 25, by refusing to allow him RTW within his medical restrictions.

59.     On February 17, 2015, Dean Foods denied Richard's Union grievances Nos. 9-12-14-B and 2-16-15-C.

60.     On March 4, 2015, Richard called Dean Food's "Ethics Helpline" again to follow up. He reported that HR Manager Spadoni refused to communicate with him any longer. He reported the names of 6 other employees who had been allowed to RTW with medical restrictions. He was told that the case was open and on-going.

61.     On April 9, 2015, Richard again called Dean Foods "Ethics Helpline," and reported that the company was violating its own equal opportunity provision in its Code of Ethics by discriminating against him because of his disability and refusing to accommodate him by not returning him to work.

62.     On February 6, 2016, Richard e-mailed HR Manager Spadoni and again requested that Dean Foods return him to work in a position that he could perform within his permanent work restrictions.

63.     On February 8, 2016, Dean Foods through Mr. Spadoni rejected Richard's request to RTW and offered no alternate accommodations or process to determine the appropriate accommodation under the circumstances.

64.     On February 22, 2016, Dean Foods notified Richard that he no longer had seniority, and was no longer its employee.

## Count I: Disability Discrimination, Including Failure to Accommodate, in Violation of the ADA

65.     Richard restates and fully incorporates into Count I his allegations set forth in Paragraphs 1 through 64, above.

66.     The ADA makes it unlawful for an employer such as Dean Foods to discriminate against a qualified individual on the basis of a disability in regard to discharge of employees, employee compensation, job training and other terms, conditions and privileges of employment, including a failure to make reasonable accommodations to the known physical and mental limitations of an employee who is otherwise a qualified individual with a disability. See 42 U.S.C. § 12112(a) and (b).

67.     At the relevant times, Richard was "disabled" as defined under the ADA.

68.     At the relevant times, Richard was a "qualified individual" as defined under the ADA.  See 42 U.S.C. § 12111(8).

69.     As described above, during the period August 7, 2014 to February 2016, Dean Foods without undue hardship, could have allowed Richard to RTW in his former light/limited duty position, or in a comparable one within his permanent medical restrictions, placed him in another position that he was qualified and able to perform, and/or granted him another reasonable accommodation to allow him to RTW.

70.     Also, as described above, Dean Foods failed to engage in an interactive process to identify potential work adjustments that would have allowed Richard to return to work in a position consistent with the limitations related to his disability.

71.     Also, as described above, in February 2016, Dean Foods terminated Richard's employment because of his disability.

11

72.     Dean Foods has treated similarly-situated, non-disabled employees more favorably than Richard.

73.     As a direct and proximate result of Dean Food's illegal conduct as described above, Richard has lost, and is expected to continue to lose, income in the form of wages and prospective retirement benefits, social security and other benefits in a sum to be proven at trial, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses.

74.     Dean Foods knew that its acts as described above were prohibited by the ADA, or acted with reckless disregard to that possibility.  Dean Foods should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

### Count II: Retaliatory Discharge in Violation of the IWCA and Common Law

75.     Richard restates and fully incorporates into Count II his allegations set forth in Paragraphs 1 through 64, above.

76.     Richard retaining counsel, filing and litigating workers' compensation claims with the IWCC, and seeking medical treatment in connection with his workplace accidents and injuries as detailed above, are activities protected by Illinois common law and the IWCA.

77.     Dean Foods became aware of Richard's IWCA-protected activities shortly after he engaged in them.

78.     As described above, Dean Foods took the aforementioned actions and omissions against Richard, including denying his workers' compensation claims and refusing to voluntary pay benefits under the IWCA including TTD, or incurred medical

expenses, all resulting in a delay in necessary medical treatment which contributed to his disability, because of his of his IWCA-protected activities.

79.     As described above, during the period August 7, 2014 to February 2016, Dean Foods, without undue hardship, could have allowed Richard to RTW in his former light/limited duty position, or in a comparable one within his permanent medical restrictions, placed him in another position that he was qualified and able to perform, and/or granted him another reasonable accommodation to allow him to RTW.

80.     Dean Food's refused to reasonably accommodate Richard because of his IWCA-protected activities.

81.     Also, as described above, Dean Foods failed to engage in an interactive process to identify potential work adjustments that would have allowed Richard to return to work in a position consistent with the limitations related to his disability because of his of his IWCA-protected activities.

82.     Also, as described above, in February 2016, Dean Foods terminated Richard's employment because of his IWCA-protected activities.

83.     Dean Food's February 2016 discharge of Richard therefore was an illegal retaliatory discharge in violation of the IWCA and Illinois common law.

84.     As a direct and proximate result of Dean Foods's illegal retaliatory discharge of Richard as described above, he has lost income in the form of wages, social security and other benefits, and has suffered emotional and physical pain, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, and he is expected to incur future damages.

13

85.    The above-described conduct by Dean Foods was willful and wanton, and with reckless disregard and indifference to Illinois common law and the IWCA, and to Richard's rights thereunder.  Dean Foods should therefore be subject to punitive damages as an example to deter others from engaging in conduct of this kind.

## Prayer for Relief (as to all Counts)

**WHEREFORE**, Plaintiff RICHARD J. JANKOWSKI ("Richard") respectfully requests that this Court enter judgment in his favor and against Defendants, DEAN FOODS, as follows:

A.    Order DEAN FOODS to make RICHARD whole by paying him appropriate back pay and reimbursement for lost pension, social security and other benefits and out-of-pocket expenses, plus pre-judgment interest in an amount to be shown at trial;

B.    Order DEAN FOODS to immediately reinstate RICHARD to his former position or another suitable position consistent with any medical restrictions he may have; or, in the alternative, order DEAN FOODS to pay RICHARD an appropriate amount of front pay;

C.    Order DEAN FOODS to pay RICHARD compensatory damages in the maximum amount allowable under the law;

D.    Order DEAN FOODS to pay RICHARD punitive damages in the maximum amount allowable under the law.

E.    Order DEAN FOODS to pay RICHARD's costs incurred in bringing this action, including, but not limited to, expert witness fees and reasonable attorneys' fees;

F.    Try all issues of fact to a jury; and,

G.    Grant such other relief as the Court deems just.

Respectfully submitted,
Plaintiff, RICHARD J. JANKOWSKI,


By:    /s/ Timothy J. Coffey
        Timothy J. Coffey, Esq.
        THE COFFEY LAW OFFICE, P.C.
        Attorneys for RICHARD J. JANKOWSKI
        1805 North Mill Street
        Suite E
        Naperville, IL 60563
        (630) 326-6600