**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION**

| | | |
|---|---|---|
| RICHARD J. JANKOWSKI, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 16 C 50103 |
| | ) | |
| DEAN FOODS COMPANY, and DEAN | ) | Judge Joan H. Lefkow |
| DAIRY HOLDINGS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

This order sets forth the court's rulings on the parties' motions *in limine* and on certain other matters discussed at the final pretrial hearing of September 12, 2019. To the extent these rulings differ from the rulings made at the hearing, the written rulings control. All rulings are subject to modification at trial.

Rulings on plaintiff Richard Jankowski's motions *in limine* (dkt. 120-1) are as follows:

1. Exclude evidence of plaintiff's employment history prior to the start of his employment with Dean—**denied in part, reserved in part**
2. Exclude evidence of the outcome or determination of the 2015 EEOC charge (apart from the Notice of Right to Sue), 2016 NLRB Charge, 2016 IDHR Charge, March 2016 Union Arbitration, and Illinois Department of Human Services 2012 Disability Determination—**granted in part, denied in part**
3. Exclude evidence relating to plaintiff's claims under the Illinois Workers' Compensation Act, except for the timing and existence of the claims—**denied in part, reserved in part**
4. Exclude evidence and argument related to defendants' undue hardship affirmative defense—**denied**
5. Exclude evidence relating to defendants' failure to mitigate affirmative defense, including whether defendants published job openings on their website and defendants' related argument that plaintiff failed to bid or apply for any such alleged jobs—**granted in part, denied in part**
6. Take judicial notice of plaintiff's life expectancy and the discount rate to compute the present value of plaintiff's lost pension benefits—**granted in part and denied in part**
7. Exclude witnesses Chris Diornik and Ivan Nieves—**granted**
8. Exclude evidence and argument related to defendants' advice of counsel defense—**denied**
9. Exclude evidence and argument related to defendants' failure to mitigate affirmative defense—**granted**.

Rulings on defendants Dean Foods Company and Dean Dairy Holdings, LLC's motions *in limine* are as follows:

1. Exclude testimony of certain current or former Dean employees (dkt. 110)—**granted in part, denied in part, reserved in part**
2. Exclude evidence and/or testimony related to destroyed job descriptions (dkt. 111)—**granted in part, denied in part**
3. Exclude evidence and/or testimony referring to Dean's Temporary Transitional Duty Program as violative of the ADA or as a 100% healed policy (dkt. 112)—**granted in part, reserved in part**
4. Exclude use of plaintiff's post-surgery photographs Bates-labeled P2416-2432 (dkt. 113)—**granted**
5. Take judicial notice of local area unemployment statistics from the Illinois Department of Employment Security, and several job advertisements published in local newspapers (dkt. 114)—**denied**.

In addition, both parties' motions to exclude experts (dkts. 109, 120-2) are granted, Jankowski's motion to compel production of addresses (dkt. 134) is granted as reflected in dkt. 140, and Jankowski's motion to deem facts admitted (dkt. 138) is denied.

## STATEMENT

Plaintiff Richard Jankowski was employed by Dean Foods Company and/or Dean Dairy Holdings, LLC (collectively, "Dean") from 2002 until February 2016. While working on October 5, 2009, he suffered an injury to his neck that he argues rendered him disabled under the Americans with Disabilities Act. He returned to work shortly after his injury but took medical leave in February 2011. In August 2014 he submitted to Dean a Work Duty Status Report stating that he was capable of returning to work subject to various medical restrictions, but Dean did not offer him a position and terminated his employment in February 2016. Jankowski now brings claims for discrimination and failure to accommodate his disability under the ADA, as well as a retaliatory discharge claim under the Illinois Workers' Compensation Act and Illinois common law.

Trial is set for September 30, 2019. Before the court are Jankowski's motions *in limine* nos. 1–9, Dean's motions *in limine* nos. 1–5, both parties' motions *in limine* to exclude experts, and Jankowski's motions to compel production of certain addresses and deem certain facts admitted. These rulings are without prejudice and are subject to change should the evidence introduced at trial be different from that anticipated in these motions. *See Hawthorne Partners* v. *AT&T Techs., Inc.*, 831 F. Supp. 1398, 1400–01 (N.D. Ill. 1993).

### Legal Standard

The movant on a motion *in limine* bears the burden of showing that the evidence that it seeks to preclude is "clearly inadmissible." *Plair* v. *E.J. Brach & Sons, Inc.*, 864 F. Supp. 67, 69 (N.D. Ill. 1994). Unless evidence is "clearly inadmissible," the court should defer ruling until trial so that questions of relevance, foundation, and prejudice can be decided in context. *Id*. The

parties should rely on these rulings in preparation for trial with the understanding that they may be modified should the offering party demonstrate admissibility at trial.

## Jankowski's Motions

### No. 1: Jankowski's Employment History Prior to His Employment at Dean.

Jankowski moves to exclude evidence of his employment history prior to the start of his employment with Dean in 2002 on grounds of relevance and risk of prejudice under Rule 403. Dean responds that such evidence is relevant to Jankowski's failure to mitigate damages "because his prior work history shows his relevant work experience and skills, thus demonstrating jobs for which Plaintiff would be eligible." (Dkt. 132 at 14.) Jankowski does not object to the evidence insofar as it pertains to his experience and skills.

 General questions about Jankowski's employment history, such as the names of his employers, the nature of his roles, and the dates that he held them, are admissible as background information and are relevant to Dean's failure-to-mitigate defense. *See Calhoun* v. *City of Chicago*, No. 09 C 2200, 2011 WL 13331674, at *3 (N.D. Ill. Aug. 15, 2011) ("general questions concerning employment history as part of the background examination would be proper under the Federal Rules of Evidence").

Dean further argues that evidence that Jankowski filed workers' compensation claims against previous employers should be admitted to demonstrate Jankowski's familiarity with the workers' compensation process and procedures, which Dean argues is relevant to the interpretation of a settlement agreement Jankowski signed resolving one of his workers' compensation claims against Dean. The court presently sees little relevance to Jankowski's familiarity with the workers' compensation process[1] and to the extent it is relevant such evidence could come in with respect to the workers' compensation claims Jankowski filed while employed at Dean Foods, which are relevant to his retaliation claim for reasons discussed below. The court reserves ruling on the specific type of evidence that may come in (if any) related to Jankowski's understanding of the workers' compensation process. Evidence related to any workers' compensation claim made at a previous employer is of scant relevance and unduly prejudicial.

The court therefore denies motion *in limine* no. 1 in part and reserves ruling in part.

### No. 2: Evidence of Various Administrative and Union Arbitral Proceedings.

In motion *in limine* no. 2, Jankowski seeks to exclude evidence of the "outcome or determination" of proceedings in front of the Equal Employment Opportunity Commission, the National Labor Relations Board, the Illinois Department of Human Rights, and an arbitrator construing certain provisions of Jankowski's collective bargaining agreement. Jankowski also argues that the court should bar Dean from questioning witnesses about Jankowski's filings in

---

[1] Dean's argument that Jankowski's familiarity with the workers' compensation process is relevant to his understanding of a prior settlement agreement is not set forth in its briefs and was raised only at the pretrial hearing.

the administrative proceedings, and should bar all reference to the union arbitration entirely. Jankowski argues that all of this evidence is irrelevant and unduly prejudicial.

Dean responds that it has not yet decided to seek admission of any of this evidence. It also notes that some of the records in the administrative proceedings reflect statements Jankowski made concerning his disability, which would qualify as non-hearsay under Rule 801(d)(2), and which courts routinely admit. *See Taliaferro* v. *Trump Entm't Resorts Inc.,* 724 Fed. Appx. 134, 136 (3d Cir. 2018).

"Although administrative findings may be admissible under Federal Rules of Evidence 803(8)(C) and 801(d)(2), the district court retains significant discretion as to whether the determinations ought to be admitted." *Lewis* v. *City of Chicago Police Dep't*, 590 F.3d 427, 442 (7th Cir. 2009) (internal punctuation omitted). The ADA grants a plaintiff a de novo hearing in a court of record. Admission of the existence and conclusions of administrative and arbitration proceedings would undermine that right and would tend to confuse and unduly affect the jury's judgment. *See id.* Other than statements by a party made in those proceedings that are admissible under Rule 801(d)(2), the motion is granted. The parties shall use "a previous occasion" or some such term to reference such a proceeding in laying foundation for an admission.

Motion *in limine* no. 2 is granted.

## No. 3: Evidence Related to Jankowski's IWCA Claims Against Dean.

Jankowski moves to exclude all evidence related to his workers' compensation claims against Dean, except their "existence and initial filing dates." (Dkt. 120-1 at 10.) Jankowski identifies a large number of documents on Dean's exhibit list that it specifically asks the court to exclude. Jankowski argues that those documents are not relevant and that any probative value they have is substantially outweighed by their risk of prejudice.

Dean responds that the evidence is relevant to the following points and not substantially more prejudicial than probative: "that Defendants (1) took appropriate actions to handle Plaintiff's workers' compensation claim, (2) ultimately succeeded in the workers' compensation claim—meaning Defendants were not forcing Plaintiff to participate in a frivolous lawsuit, and (3) Defendants had previously resolved Plaintiff's workers' compensation claims outside of litigation." (Dkt. 132 at 10.) At the pretrial conference, Dean further argued that the settlements of Jankowski's 2003 and 2005 workers' compensation claims were relevant to Jankowski's present retaliation claim because they show that Dean allowed Jankowski to return to his job after filing workers' compensation claims.

Evidence showing Jankowski previously made workers compensation claims that were resolved and Dean allowed him to continue to work is relevant to whether Dean was motivated to retaliate in the instance at issue (although it could also suggest that too many claims justify termination). It should be unnecessary to document this with paper unless a dispute of fact arises. The court reserves ruling on what, if any documents, should be received in evidence.

Motion *in limine* no. 3 is denied in part and reserved in part.

**No. 4: Dean's Undue Hardship Affirmative Defense.**

This court previously granted Jankowski summary judgment on Dean's undue hardship affirmative defense because Dean had failed to support the defense with sufficient evidence, in particular evidence quantifying the financial burden that would accompany reemploying Jankowski. (Dkt. 96 at 13.) Jankowski now argues that this ruling should be understood to effectively preclude Dean from presenting any evidence on the reasonableness of the accommodation Jankowski proposed, since the issues of reasonable accommodation and undue hardship overlap. *See Vande Zande* v. *State of Wis. Dep't of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995 ("[C]osts enter at two points in the analysis of claims to an accommodation to a disability."). Specifically, Jankowski argues that Dean should be precluded from presenting evidence related to lower production standards, safety hazards, or the costs that might flow from an accommodation. (Dkt. 120-1 at 14-15.)

At the pretrial conference, Jankowski stated that the only accommodation he needed to return to work in August 2014 was to be permitted to work under the "light duty" requirements he worked under following his October 2009 injury, namely not pushing or pulling loaded bossies or performing any work outside the parameters of his medical restrictions. (*See* dkt. 96 at 2.) Dean countered that permitting Jankowski to return to light duty on a permanent basis would not be reasonable for reasons of cost and safety. Dean represented that it planned to put on evidence to this effect through its Huntley plant manager and other employees.

Dean may offer evidence relating to the proportionality of the cost of the accommodation in relation to the benefit to Jankowski.[2] *Vande Zande* v. *State of Wisc. Dept. of Admin.*, 44 F.3d 538, 543 (7th Cir. 1995).

Motion *in limine* no. 4 is denied.

**No. 5: Jankowski's Alleged Failure to Bid for Jobs Posted on Dean's Website**

Jankowski moves to exclude "evidence relating to Defendants' failure to mitigate affirmative defense, including regarding whether Defendants published job openings on their

---

[2] The Seventh Circuit's opinion in *Vande Zande*, 44 F.3d at 543, can be read to place an initial burden on plaintiff to show that the cost of an accommodation is not excessive in relation to the benefit to the plaintiff. This portion of the opinion illustrates that, as in negligence, where the defendant must show reasonable but not the maximum possible care, under the ADA the defendant may show that, although potentially affordable and thus not an undue hardship, the accommodation is unreasonable because it would be "required to expend enormous sums in order to bring about a trivial improvement in the life of a disabled employee." *Id*. at 542-43. The ADA and EEOC regulations do not suggest that a plaintiff has any prima facie burden to offer evidence that the cost of an accommodation is not excessive. *See* 42 U.S.C. § 12112(b)(5) and 29 C.F.R. § 1630.2(o)(1)(ii) (describing "reasonable accommodation "as referring to "[m]odifications or adjustments to the work environment . . . that enable an individual with a disability who is qualified to perform the essential functions of that position"). Thus, the court will not require Jankowski to go forward with evidence of lack of disproportionate cost, but Dean may offer evidence of the opposite.

website and Defendants' related argument that plaintiff failed to bid or apply for any such openings." (Dkt. 120-1 at 15.)

Jankowski's motion relies on the principle that an award of back and front pay under the ADA is an issue the ADA commits to the judge, not the jury. *Pals* v. *Schepel Buick & GMC Truck, Inc.*, 220 F.3d 495, 500 (7th Cir. 2000) ("Back pay and front pay are equitable remedies under § 706(g)(1) and therefore matters for the judge"); *see also Stragapede* v. *City of Evanston*, 125 F. Supp. 3d 818, 826 (N.D. Ill. 2015) (judge deciding failure-to-mitigate question); *Arroyo* v. *Volvo Grp. N. Am., LLC*, No. 12-CV-6859, 2017 WL 2985649, at *4 (N.D. Ill. July 13, 2017) (same). Jankowski then cites *E.E.O.C.* v. *Bank of America, N.A.*, No. 11 C 6378, 2014 WL 5310128, at *1 (N.D. Ill. Oct. 17, 2014), in which this court granted a motion excluding "any jury-trial reference to . . [a plaintiff's] efforts to mitigate his lost wages" on an ADA claim.

As Jankowski conceded at the pretrial conference, however, on an IWCA retaliation claim the issue of mitigation of damages is a question for the jury. *Kasper* v. *Saint Mary of Nazareth Hosp.*, 135 F.3d 1170, 1176 (7th Cir. 1998); *Tomao* v. *Abbott Labs., Inc.*, No. 04 C 3470, 2007 WL 141909, at *3 (N.D. Ill. Jan. 16, 2007) (overruling objection to evidence regarding failure to mitigate in an ADA and ADEA action). The motion is therefore denied.

Turning to the specific question of whether Dean may introduce evidence of jobs posted on its website, the court concludes that such evidence has no relevance given that Dean allegedly refused to allow Jankowski to work when he sought to return in August 2014. The job postings might have relevance had Dean offered positions to Jankowski as accommodations, but Dean does not argue that that occurred.

Motion *in limine* no. 5 is granted insofar as it seeks exclusion of evidence of jobs posted on Dean's website. It is denied insofar as it seeks exclusion of Jankowski's failure to mitigate generally.

**No. 6: Judicial Notice of CDC and Federal Reserve Data**

Jankowski's motion *in limine* no. 6 asks the court to take judicial notice of the average life expectancy—81 years—of a Caucasian male in the United States according to 2016 data from the Centers for Disease Control and Prevention. (P. Tr. Ex. 91). Jankowski also asks the court to take judicial notice of the "appropriate discount rate," which Jankowski represents is the 30-year Treasury Constant Maturity rate of 2.58% published by the Federal Reserve on July 25, 2019.

With respect to Jankowski's life expectancy data, Dean responds that it should not be admitted because the CDC has released more recent data showing that the average life expectancy for Caucasian males in the United States is 76.4 years. (Dkt. 132 at 16.) At the pretrial conference the parties agreed to confer and report back to the court on the appropriate life expectancy data to use.

Dean does not specifically object to Jankowski's request that the court take judicial notice of his proposed discount rate.

6

Motion *in limine* no. 6 is granted as to the Federal Reserve data and denied as to the CDC data.

**No. 7: Witnesses Not Disclosed Pursuant to Rule 26(a).**

Jankowski moves to exclude the testimony of Chris Diornik, the HR director of Dean's Great Lakes Region, and Ivan Nieves, a former attorney for Liberty Mutual Insurance Company, on the grounds that Dean did not identify them as witnesses on their Rule 26(a)(1) disclosures or at any subsequent time until it served Jankowski a list of trial witnesses on August 19, 2019. (Dkt. 120-1 at 18-19).

Dean does not contest the tardiness of the disclosure but argues that it is not prejudicial to Jankowski because the witnesses would testify to Dean's Temporary Transitional Duty Program and Jankowski's workers' compensation history, which are topics that "have been repeatedly raised in this litigation." (Dkt. 132 at 17.)

The Seventh Circuit has instructed that "the sanction of exclusion is automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David* v. *Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003). In determining whether the violation was justified or harmless, the court should consider "(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date." *Id.*

Dean has not met its burden of showing the violation was justified or harmless. It offers no explanation for why the witnesses were not disclosed in a timely fashion. It offers some argument as to why the late disclosure was not prejudicial, but merely stating that the witnesses would testify to general topics that have been discussed in the litigation does not mean that the witness's specific testimony would not be prejudicial, particularly given that Jankowski had no opportunity to depose the witnesses.

The court grants motion *in limine* no. 7.

**No. 8: Advice of Counsel Defense. (Dkt. 120-1.)**

Jankowski moves to exclude evidence and argument related to whether certain actions of Dean employees were undertaken pursuant to the advice of their in-house counsel. (Dkt. 120-1 at 20-22.) Jankowski asserts that, at the deposition of Dean's HR Manager George Spadoni, Dean instructed Spadoni not to answer, on grounds of attorney-client privilege, questions regarding advice he may have been given regarding whether Jankowski could perform the essential functions of an operator. (*Id.* at 20.) Jankowski thus argues that Dean should not be allowed to use the privilege as both a shield and a sword. (*Id.*)

The specific issue, as the court understands it, is as follows: the regulations implementing the ADA provide that "[t]o determine the appropriate reasonable accommodation it may be necessary for the [employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3); *see also*

*Beck* v. *Uni* v. *of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). The Seventh Circuit has instructed that a party's failure to engage in an interactive process in "good faith" and by making "reasonable efforts" may be determinative of liability on a reasonable-accommodations claim. *Beck*, 75 F.3d at 1135; *see also E.E.O.C.* v. *Sears, Roebuck & Co.*, 417 F.3d 789, 793 (7th Cir. 2005). Here, Jankowski intends to introduce evidence that Dean did not engage in an interactive process in good faith because they terminated multiple meetings that had been scheduled to discuss accommodations after Jankowski refused to sign a release Dean had drafted that would have permitted disclosure of Jankowski's HIPAA-protected medical information to his union representatives at the meetings. (*See* Dkt. 132 at 8; *see also* Dkt. 96 at 9 n. 2.) Jankowski intends to argue that Dean's request for a HIPAA release was disingenuous and was actually intended to impede the interactive process because Dean is not a covered entity to which HIPAA applies. (Dkt. 132 at 8-9.)

Dean represents that it would elicit testimony from Spadoni, that he believed he "needed a HIPAA release to discuss Jankowski's medical restrictions in front of his union representatives." (*Id.* at 9.) Spadoni would further testify that "the HIPAA release was prepared following consultation with counsel." (*Id.*)

The fact that a client consulted with an attorney is not in itself privileged; it is rather the substance of the communications that are privileged. *Beraha* v. *Baxter Healthcare Corp.*, No. 88 C 9898, 1994 WL 494654, at *3 (N.D. Ill. Sept. 6, 1994) ("It is axiomatic that mere reference to the fact that a conversation between attorney and client occurred is not privileged"). Thus, by eliciting testimony that the HIPAA release "was prepared following consultation with counsel," Dean would not be seeking to introduce privileged communications offensively.

Consistent with this principle, attorney-client communications are not put in issue such that privilege would be waived "merely because counsel's advice may have influenced a litigant's state of mind and is therefore relevant to that state of mind." *DR Distributors, LLC* v. *21 Century Smoking, Inc.*, No. 12 CV 50324, 2015 WL 5123652, at *7 (N.D. Ill. Sept. 1, 2015) (permitting plaintiff to introduce the fact that he consulted with counsel to establish a "good faith" defense to trademark infringement even where the jury might infer that counsel "blessed" plaintiff's actions); *Bosch* v. *Ball–Kell*, No. 03 CV 1408, 2007 WL 601721 (C.D. Ill. Feb. 21, 2007) (same with respect to copyright infringement).

Similarly, the specific objection Dean's counsel raised at Spadoni's deposition was to instruct Spadoni "not to answer [sic] . . . the *substance* of any conversations that he had with [in-house counsel]." (Spadoni Dep. Tr. at 68:5-9 (emphasis added).) Thus, to the extent Jankowski's objection relates to the questions he was permitted to ask at Spadoni's deposition, the court disagrees that he was prevented from asking whether any relevant conversations took place.

Jankowski's motion thus is denied to the extent it seeks to bar testimony that Spadoni consulted with counsel and subsequently prepared the HIPAA release. As set forth in *Bosch*, however, testimony discussing the substance of counsel's advice or testimony that Spadoni "relied on" that advice would be improper in light of Dean's prior assertion of the privilege.

8

**No. 9: Unemployment Statistics and Job Advertisements Published in Newspapers**

Jankowski moves to exclude local area unemployment statistics published by the Illinois Department of Employment Security and certain "help wanted" ads published in local newspapers on grounds of hearsay and lack of foundation. (D's Proposed Trial Exs. 75-76).) Jankowski further argues, essentially on relevance grounds, that there is "no proof that any of these prospective job opportunities were . . . comparable to Plaintiff's former job with Defendants or that Plaintiff may have been qualified for any one of them." (*Id.*) (This ruling applies as well to Dean's motion *in limine* no. 5 in which it asks the court to take judicial notice of the same documents.)

With respect to the Illinois Department of Employment Security statistics Dean offers, the court agrees that statistics published by administrative agencies may be appropriate subjects of judicial notice. *Menominee Indian Tribe of Wisc.* v. *Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) ("Judicial notice of historical documents, documents contained in the public record, and reports of administrative bodies is proper"). The issue with Dean's statistics—which show only the unemployment rate in a given county, not broken down by industry or trade—is their relevance. Generally speaking, the best way to introduce evidence of the availability of jobs on a failure-to-mitigate defense is through an expert report. *See Lyons*, 2009 WL 10697507, at *9 (admitting expert report based in part on labor market survey); *Smith* v. *Farmstand*, No. 11-CV-9147, 2016 WL 5912886, at *18 (N.D. Ill. Oct. 11, 2016) (discussing admissibility of expert report on availability of comparable jobs). Here, taking judicial notice of county-level unemployment statistics would mean reading the statistics to the jury without any testimony as to what they meant and without giving Jankowski the opportunity to conduct any sort of cross-examination to test their weight. *See N.L.R.B.* v. *Midwestern Pers. Servs., Inc.*, 508 F.3d 418, 427 (7th Cir. 2007) ("In general, it is reasonable for the [National Labor Relations] Board to reject expert testimony regarding generalized labor market analysis as evidence that particular discriminatees failed to perform a reasonably diligent search"). The court thus excludes the statistics. The documents are excluded from evidence.

The court also excludes the job advertisements because Dean has no foundation witness either to authenticate the documents[3] or to subject them to cross examination, for example, to test the geographical area in which the advertisements were circulated, for how long, or otherwise. Moreover, generally speaking, courts do not find statements published in newspapers to be beyond reasonable dispute such that they may be accepted as judicially-noticed facts. *See Gen. Elec. Capital Corp.* v. *Lease Resolution Corp.*, 128 F.3d 1074, 1084 (7th Cir. 1997) (citing *Cofield* v. *Alabama Pub. Ser* v. *Comm'n*, 936 F.2d 512, 517 (11th Cir.1991) (refusing to accept publication in daily newspaper as source that establishes facts as indisputable)).

Motion *in limine* no. 9 is granted. Dean's motion *in limine* no. 5 is denied.

---

[3] *See Klayman* v. *Judicial Watch*, 299 F. Supp. 3d. 141, 148 (D.D.C. 2018) (holding advertisements printed from a website are not self-authenticating under Rule 902(6) absent a copy of the original publication).

**Dean's Motions**

**No. 1: Testimony of Current and Former Dean Employees (dkt. 110).**

Section A of Dean's motion seeks exclusion of several witnesses—Jared Vitemb, Noe Ramirez, Josh Woodside, and Terry Zentner—who were not listed on Jankowski's Rule 26(a)(1) disclosures. As set forth above exclusion of these witnesses is "automatic and mandatory unless the sanctioned party can show that its violation of Rule 26(a) was either justified or harmless." *David*, 324 F.3d at 857. Jankowski responds that there is no prejudice to Dean from the late disclosure of these witnesses because all except Vitemb are current Dean employees, and Dean has "responded to interrogatories, produced documents, and included information about these individuals throughout the course of these proceedings." (Dkt. 125 at 4.) Jankowski further represented at the pretrial hearing that it likely would not call Vitemb if a stipulation concerning his testimony could be reached.

The court finds no prejudice to Dean from the late disclosure of the witnesses who are its current employees because they are under its control, eliminating prejudice entailed in a late deposition by an opposing party. Vitemb, however, who is no longer an employee, however, as with Dean's tardily disclosed witnesses, may not testify.

Section B of Dean's motion seeks exclusion of evidence regarding Dean's treatment of employees with only temporary—as opposed to permanent—medical restrictions, which Jankowski may offer as comparators to show Dean discriminated against him. (*Id.* at 4-6.) The distinction between "temporary" as opposed to "permanent" disability is irrelevant under the ADA. *See Gogos* v. *AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1172 (7th Cir. 2013) ("a person with an impairment that substantially limits a major life activity, or a record of one, is disabled, even if the impairment is transitory and minor") (internal punctuation omitted). Jankowski may attempt to show that an accommodation made temporarily for a worker could as readily be made available to him indefinitely (i.e., is reasonable) if it would enable him to perform the essential functions of his job. This is in contrast to a permanent light-duty position, which is beyond the employer's obligation to accommodate. *See Watson* v. *Lithonia Lighting*, 304 F.3d 749, 752 (7th Cir. 2002) (rejecting plaintiff's argument because "what she wants is a different job, comprising a subset of the assembly-line tasks, rather than an accommodation in the performance of one of Lithonia's existing assembly-line jobs (all of which entail all tasks)").

Plaintiff also propounds the theory that Dean discharged, rather than accommodated, other workers who were not fully recovered from what was thought to be a temporary disability. Evidence of how Dean treated such employees may corroborate Jankowski's evidence that Dean discriminated against Jankowski because of his limitations. *See Hasan* v. *Foley & Lardner LLP*, 552 F.3d 520, 529 (7th Cir. 2009) ("behavior toward or comments directed at other employees in the protected group is one type of circumstantial evidence that can support an inference of discrimination") (internal punctuation omitted). The court accordingly denies motion *in limine* no. 1 to exclude all testimony and evidence as to employees with only temporary work restrictions.

Section C of Dean's motion seeks exclusion of "evidence of employees who were eligible for and received FMLA leave." (Dkt. 110 at 7.) More precisely, Dean argues that

10

evidence that it "granted FMLA leave to FMLA-eligible employees is wholly irrelevant to Plaintiff's claims, as it does not tend to prove or disprove Plaintiff's claims regarding whether he was discriminated against on the basis of his disability." (*Id.* at 6.) Dean asserts that it is undisputed that Jankowski did not request FMLA leave between his October 2009 injury and his termination in 2016. *Id.*

Jankowski does not specifically respond to this part of Dean's motion.

Since Jankowski did not request FMLA leave, there appears to be no relevance to whether Dean granted or denied FMLA leave to other employees. Thus, the motion is granted and Jankowski is prohibited from introducing testimony or evidence intended to show that other Dean employees requested and were either granted or denied FMLA leave.

Sections D and E of Dean's motion seek exclusion of the types of evidence discussed in Sections A-C on Rule 403 grounds. The court will address questions of undue prejudice with respect to specific pieces of evidence as they arise. This portion of Dean's motion therefore is denied.

Finally, Section F of Dean's motion seeks to exclude "testimony and speculation" of Dean employees as to the accommodations Dean may have been able to make for Jankowski. (Dkt. 110 at 8-9.) Dean does not identify any specific testimony along these lines that it seeks to bar. This court already has rejected a similar argument in its ruling on summary judgment, where the court allowed that Dean employees could offer opinion testimony concerning the "essential functions" of relevant jobs. (Dkt. 96 at 9.) The Seventh Circuit has instructed that evidence relevant to the determination of whether a particular duty is an essential function includes the work experience of past and current incumbents of the job. *Stern* v. *St. Anthony's Health Ctr.*, 788 F.3d 276, 287 (7th Cir. 2015) (citing 29 C.F.R. § 1630.2(n)(3)).

Thus, it would be proper for a Dean employee to testify within his or her personal knowledge as to whether a given accommodation was workable within Dean's facility, or to offer an opinion that a given accommodation would not require a worker to lift a certain amount of weight, for example. A Dean employee also could properly testify within his or her personal knowledge as to tasks he or she believed Jankowski could perform, based on past observations. This aspect of Dean's motion is denied and the relevant evidentiary questions will be addressed at trial.

**No. 2: Testimony Pertaining to Alleged Destroyed Job Descriptions (dkt. 111).**

Dean's motion *in limine* no. 2 seeks to bar Jankowski from requesting an adverse inference instruction based on Dean's alleged destruction of certain written job descriptions related to operator positions at the Huntley plant. At the pretrial conference, Jankowski withdrew his request for an adverse inference instruction, so Dean's motion *in limine* on that issue is granted.

Dean's motion also seeks to "exclude any evidence and/or testimony pertaining to [the] allegations of destroyed job descriptions," (dkt. 111 at 1). That part of the motion is denied. Dean argues in passing that such testimony would be confusing and unduly prejudicial, but evidence

that Dean destroyed written descriptions of jobs putatively available to Jankowski would be relevant to whether Dean's argument that Jankowski could not perform the essential functions of those jobs is made in good faith, and the court sees no substantial risk of confusion.

Motion *in limine* no. 2 thus is granted in part and denied in part.

**No. 3: Testimony Referring to Dean's Temporary Transitional Duty Program as Violative of the ADA or as a "100% Healed" Policy (dkt. 112).**

Dean's motion *in limine* no. 3 seeks to exclude evidence or argument at trial that its Temporary Transitional Duty Program violates the ADA or that Dean has a "100% healed" policy, under which it allegedly requires injured workers to be under no restrictions in order to return to work, as opposed to providing them reasonable accommodations. Jankowski argues that such testimony would be relevant under Rule 404(b) to show that Dean had a general practice of discriminating against employees protected by the ADA.

Evidence that Dean had a policy or practice of not providing reasonable accommodations to disabled employees may be admissible to show that it refused to provide reasonable accommodations to Jankowski. *See McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 804 (1973). The decision whether to admit such pattern-or-practice evidence under Rule 403 is a fact-intensive inquiry. *Sprint/United Mgmt. Co.* v. *Mendelsohn*, 552 U.S. 379, 388 (2008).

Here, Jankowski argues that Dean's TTD program as designed violates the ADA because it offers light-duty work to employees injured on the job but excludes those who have non-work-related disabilities. *See Severson v. Heartland Woodcraft, Inc.*, 872 F.3d 476, 482 (7th Cir. 2017) ("if an employer has a policy of creating light-duty positions for employees who are occupationally injured, then that same benefit ordinarily must be extended to an employee with a disability who is not occupationally injured unless the company can show undue hardship"). Jankowski has not, however, directed the court to any evidence showing that Dean's TTD program operates in the way he alleges.

Jankowski also argues that, TTD program notwithstanding, Dean had a *de facto* policy of requiring its employees to be "100% healed" to return to work. In support of this argument, Jankowski has provided three memos Dean employees drafted related to meetings with Jankowski in which they say that they told him "that because he is not feeling a 100% and cannot fulfill 100% of his job duties then he will need to go home until he can." (Dkt. 129 at 1.) These memos clearly are admissible with respect to how Dean responded to Jankowski's injury (Dean has not objected to them), but they do not go so far as to show Dean had a general "100% healed policy."

At this point, Jankowski has not made a sufficient showing either that the TTD program violates the ADA or that Dean had a *de facto* "100% healed" policy to make argument along those lines in his opening statement. The court reserves ruling on the admissibility of specific evidence related to these purported policies.

Motion *in limine* no. 3 is granted in part and reserved in part as stated herein.

**No. 4: Jankowski's Post-Surgery Photographs (dkt. 113).**

Dean's motion *in limine* no. 4 seeks to bar photos of Jankowski taken shortly after surgery on his neck in August 2013.

The court grants this motion for the case in chief. One or more photos may, upon a showing of relevance, be used as rebuttal evidence.

**No. 5: Judicial Notice of Local Area Unemployment Statistics and Various Job Advertisements Published in Newspapers (dkt. 114).**

For the reasons set forth above with respect to Jankowski's motion *in limine* no. 9, this motion is denied.

**Motions to exclude experts. (Dkts 109, 120-2.)**

Both parties moved to exclude each other's proffered expert under *Daubert* v. *Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). At the pretrial conference, however, both parties agreed that exclusion of their own expert would be proper if the other party's expert also was excluded. The court therefore grants both motions to exclude.

**Jankowski's motion to compel production of addresses. (Dkt. 134.)**

The court has separately ordered Dean to produce the information requested.

**Jankowski's motion to deem facts admitted. (Dkt. 138)**

Jankowski moves to deem certain parts of Dean's answer and responses to requests for admission as judicial admissions that may be read to the jury if Dean attempts to present evidence that contradicts them. The court will address this issue as it arises at trial.

Date:   September 19, 2019

_____
U.S. District Judge Joan H. Lefkow